Meggett vs. The City of Eau Claire and another.

MEGGETT, Appellant, vs. THE CITY OF EAU CLAIRE and another, Respondents.

*February 2 — February 23, 1892.*

*Municipal corporations: Assessments for street improvements: Setting aside for irregularities: Front-foot rule: Constitutional law: "Due process of law."*

1. In an equitable action to set aside a special assessment for street improvements, etc., a complaint showing mere irregularities and failures to comply with minor statutory requirements is insufficient unless it alleges an offer to pay the amount of such assessment justly chargeable to the property of the plaintiff.

2. Under the charter of Eau Claire (ch. 184, Laws of 1889) the city authorities may apportion the entire cost of a sewer and a pavement on a street among the several lots fronting thereon according to their respective frontages. In determining what property will be benefited by the improvement, and hence should be assessed therefor, the action of the common council is conclusive.

3. The charter of Eau Claire provides (Laws of 1889, ch. 184, subch. V, sec. 21) that whenever any improvements chargeable to the property adjacent thereto shall have been determined upon, the proportion of the costs properly chargeable to each lot subject to contribute to the payment of the same shall be ascertained by the council, and the city clerk shall forthwith issue to the occupant of each such lot a certificate stating the amount assessed and chargeable to such lot, and such amount shall, from the time it is so ascertained, be a lien on the lot, and shall be entered against the same in the tax warrant and be collected in the same manner as other taxes. Sec. 30 requires that an estimate of the whole expenses of such improvements, to be assessed and charged to each lot, shall be made and filed in the office of the city clerk, for the inspection of parties interested, before such work shall be ordered to be done; that the work is to be let to the lowest bidder, upon certain conditions and with certain reservations, upon ten days' notice published in the official city paper. Sec. 34 requires that, upon the determination of the amount chargeable upon the abutting lots, notice shall be given in the official paper of the letting of the contract for the performance of the work, of the filing of such statement, and the proposed issue of bonds unless the lot-owners, respectively, elect to pay, etc. *Held,* that the proceedings required by the charter amount to "due process of law," and that no other notice need be given to the lot-owner.

APPEAL from the Circuit Court for *Eau Claire* County.

This action was commenced April 5, 1890, to restrain the collection of an assessment for the construction of a sewer and pavement on the street in front of the plaintiff's lots, and to set aside the same as null and void.

The complaint alleges, in effect, that the plaintiff is the owner of two lots described in the city, fronting on South Barstow street a distance of 105½ feet; that, on or about June 26, 1889, at a regular meeting of the council, a resolution was introduced authorizing the construction of a sewer in a section of said street described, including the portion in front of the plaintiff's lots, in accordance with the plans for the same made by the city engineer; that said resolution was referred to a committee, which reported thereon at a regular meeting of the council, July 3, 1889, and recommended its passage, and the same was thereupon passed and adopted; that, in pretended pursuance of said resolution, and on or about August 1, 1889, the city engineer made and filed an estimate of the whole expenses to be charged to each lot or parcel of land for the construction of said sewer, in accordance with the provisions of sec. 3 of the ordinance of the city approved April 12, 1886; that according to said estimate the cost of said sewer in front of said lots was the sum of forty-two cents per foot, amounting in all to $44.31, and that that was the only estimate for improvements by said engineer of the costs of said sewer; that such estimate was in excess of the actual cost of said sewer, and was made arbitrarily and without reference to the actual cost or the benefits which would accrue to the property so assessed; that the contract for the construction of said sewer was, in connection with other systems of sewerage which had been previously adopted by the city, and upon which estimates of costs had been made, let to one Laycock for and at the uniform rate of forty-four cents per front foot, or $46.42 to said lots of the plaintiff; that

the council so let said contract at such increased rate arbitrarily and without authority or notice to the plaintiff; that the actual cost of building sewers on the several streets was not uniform, and that on other streets it was greatly in excess of the actual cost in front of the plaintiff's lots, and that such assessment was greatly in excess of her proportion of the contract price, and included the cost of two connections with the water works, and that the city omitted and neglected to estimate the benefits to the lots fronting on said street, to the injury of the plaintiff, and that the plaintiff never received any notice or opportunity for the hearing of said matters.

For a second cause of action the complaint alleges, in effect, that at a regular meeting of the council held August 7, 1889, a petition, signed by persons named, praying the construction and laying of a pavement in and upon said street was received and acted upon and referred to the committee on pavements, and such proceedings were thereafter had thereupon that the council passed and adopted an ordinance therefor at said meeting, which was approved August 7, 1889; that thereafter, and in pretended pursuance of said proceedings, the council proceeded to assess against said lots the sum of $69.10, as a special tax and assessment for and on account of the construction of said pavement, and the same is held as a special assessment thereon; that said lots were not benefited by said pavement; that the main object and purpose of making said pavement was to improve such street as a main thoroughfare, and to improve the park thereon, and to make said street more convenient and serviceable to the public, rather than to benefit the resident owners of property thereon; that the property thereon is mostly residence property, and that said pavement does not, to any extent, benefit such property, but principally the business property and said park, and that the council, entirely ignoring said benefits, arbitrarily and unlawfully

assessed the whole cost thereof upon the abutting lands; that the plaintiff never had any notice or opportunity to be heard as to the extent of the taxing district, nor as to the part or amount that she should pay towards such pavement, nor as to the benefits she would derive therefrom; that said special assessments were liens upon said lands.

To such complaint the defendants demurred on the ground that neither count, nor both taken together, constituted a cause of action. From the order sustaining such demurrer the plaintiff appeals.

For the appellant there was a brief by *Alexander Meggett*, attorney, and *Wm. F. Bailey*, of counsel, and oral argument by *T. F. Frawley*.

*L. A. Doolittle*, for the respondents.

CASSODAY, J. This is a bill in equity to set aside a special assessment to pay for the construction of a sewer and a pavement on the street running in front of the plaintiff's lots, and to restrain the collection thereof, on the grounds mentioned in the foregoing statement. To state facts sufficient to constitute a cause of action for such equitable relief, it is not enough for the complaint to allege in direct terms the inequality and injustice of such assessment, but it must also allege facts showing such inequality and injustice or going to the groundwork of the assessment. *Pratt v. Lincoln Co.* 61 Wis. 62; *Fifield v. Marinette Co.* 62 Wis. 532; *Wisconsin Cent. R. Co. v. Ashland Co.* 81 Wis. 1, 11, and cases there cited. Where, in such a case, the complaint alleges facts showing mere irregularities and failures to comply with some minor statutory requirements, it must be held insufficient, unless it further alleges an offer to pay the amount of such assessments justly chargeable to the property of the plaintiff. Here there is no allegation of any such offer to pay.

Some of the defects in the assessments here relied upon

are such mere irregularities, and hence need not be further considered. The complaint is on the theory that the plaintiff can only be required to pay her proportionate amount of the actual cost of the portion of the street directly in front of her lots, and then only to the extent they are benefited thereby. We are clearly of the opinion, however, that the city authorities were authorized by the charter to apportion the entire cost of the sewer and the pavement, respectively, upon that street among the several lots fronting thereon, under the front-foot rule. *State ex rel. Christopher v. Portage*, 12 Wis. 562. It has been held in Pennsylvania that a lot-owner cannot defend against an assessment under the front-foot rule, for the construction of a sewer in front of his lot, on the ground that such sewer was neither a private benefit to him or his property, nor a matter of necessity to the public. *Michener v. Philadelphia*, 118 Pa. St. 535; *Harrisburg v. McCormick*, 129 Pa. St. 213; *Chester City v. Black*, 132 Pa. St. 570. In determining what property would be benefited, and hence should be assessed, the action of the common council was conclusive. *Teegarden v. Racine*, 56 Wis. 545.

The principal defect in the assessment here relied upon is the alleged want of notice. It is claimed that the ordinance under which the sewer and pavement were constructed was passed and adopted only seven days after its introduction, instead of fourteen days after such introduction and ten days after the publication of the proceedings of the council showing the same, as required by the original charter. Sec. 1, subch. 6, ch. 16, P. & L. Laws of 1872. But this court has already, in effect, held that that provision is repealed by the act to revise, consolidate, and amend the charter which went into effect March 30, 1889 (chapter 184, Laws of 1889). *Smith v. Eau Claire*, 78 Wis. 461; *Drummond v. Eau Claire*, 79 Wis. 97. The question recurs whether the assessments can be maintained under the present charter. The conten-

tion is that the charter requires no notice to be given to
the lot-owner nor any opportunity for the plaintiff to be
heard as to the proper amounts of such assessments, re-
spectively, with which her lots were chargeable.    In other
words, the contention is that by the provisions of the char-
ter the city was authorized to take the plaintiff's property
without due process of law or any process of law; and hence
that the same is in conflict with the constitution, and there-
fore void.   Sec. 1, art. XIV, Amend. Const. U. S.   This
court has frequently recognized the ample and almost ab-
solute power of the legislature over the subject of special
assessments.   *Warner v. Knox,* 50 Wis. 434, and cases there
cited.   Mr. Justice Tᴀʏʟᴏʀ, speaking for the court, there
well said: " The manner of making street improvements in
cities, and of collecting the assessments necessary to pay
for such improvements, and the property which shall be
charged with the cost thereof, is mainly a matter for the
consideration of the legislature; and it would require a very
strong showing of injustice and wrong to justify this court
in setting aside the action of the legislature upon a subject
of that nature."   The supreme court of the United States
has, in effect, held that the constitutional provision men-
tioned is not infringed by a state law authorizing the im-
position of a tax or assessment upon property according to
its value, " if the owner has an opportunity to question the
validity or the amount of it, either before that amount is
determined, *or in subsequent proceedings for its collection.*"
*Hagar v. Reclamation Dist.* 111 U. S. 701.   After speaking
of the instances in which a regular course of judicial pro-
ceeding is requisite, Mr. Justice Fɪᴇʟᴅ, on behalf of the
court, on pages 708–710, said: '' But, where the taking of
property is the enforcement of a tax, the proceeding is nec-
essarily less formal, and whether notice to him is at all
necessary may depend upon the character of the tax and
the manner in which its amount is determinable.   The

necessity of revenue for the support of the government does not admit of the delay attendant upon proceedings in a court of justice, and they are not required for the enforcement of taxes or assessments. . . . Of the different kinds of taxes which the state may impose, there is a vast number of which, from their nature, no notice can be given to the tax-payer, nor would notice be of any possible advantage to him, such as poll taxes, license taxes (not dependent upon the extent of his business), and, generally, specific taxes on things or persons or occupations. In such cases the legislature, in authorizing the tax, fixes its amount and that is the end of the matter. If the tax be not paid, the property of the delinquent may be sold and he thus be deprived of his property. Yet there can be no question that the proceeding is due process of law, as there is no inquiry into the weight of evidence or other element of a judicial nature, and nothing could be changed by hearing the tax-payer. No right of his is therefore invaded. Thus, if the tax on animals be a fixed sum per head, or on articles a fixed sum per yard or bushel or gallon, there is nothing the owner can do which can affect the amount to be collected from him. So, if a person wishes a license to do business of a particular kind or at a particular place, such as keeping a hotel or a restaurant, or selling liquors or cigars or clothes, he has only to pay the amount required by the law, and go into the business. So, also, if taxes are imposed in the shape of licenses for privileges, such as those on foreign corporations for doing business in the state, or on domestic corporations for franchises, if the parties desire the privilege they have only to pay the amount required. In such cases there is no necessity for notice or hearing."

To the same effect are *Kentucky Railroad Tax Cases*, 115 U. S. 331; *Spencer v. Merchant*, 125 U. S. 345; *Palmer v. McMahon*, 133 U. S. 668; *Lent v. Tillson*, 140 U. S. 316; *Fass v. Seehawer*, 60 Wis. 535; *Baldwin v. Ely*, 66 Wis.

188–191; *Murphy v. Hall*, 68 Wis. 210. In *Spencer v. Merchant, supra*, it was in effect held that where the statute of a state, under which a street assessment is made, " provides for notice to and hearing of each owner, *at some stage of the proceedings*, upon the question what proportion of the tax shall be assessed upon his land, there is no taking of his property without due process of law," within the meaning of the constitution.

The question recurs whether the charter provisions in the case at bar can be sustained upon the principles of law stated. Sec. 21 of subch. V of the present charter provides, in effect, that whenever any improvement chargeable to the property adjacent thereto shall have been determined upon, the proportion of the costs properly chargeable to each lot subject to contribute to the payment of the same shall be ascertained by the council, and the city clerk shall forthwith issue to each such lot occupant " a certificate stating the amount assessed and chargeable " to such lot, and that the same shall, from the time it is so ascertained, be a lien thereon, and entered against such lot in the tax warrant, and be " *collected in the same manner as other taxes.*" It is stated in the brief that the complaint alleges that no such certificate was ever made or received. But we find no such allegation in the complaint, nor any mention of such certificate. Counsel probably intended to be understood as saying that the alleged want of notice was an allegation to the effect that no such certificate was issued as prescribed. But this does not answer the rule of pleading already mentioned in such equitable action. We must therefore assume, for the purposes of this appeal, that such certificate was issued as required by the charter. The fact that the amount so determined upon and named in the certificate was, by the charter, to be collected in the same manner as other taxes, necessarily required the giving of notices the same as in the collection of such other taxes. Again, it was re-

Meggett vs. The City of Eau Claire and another.

quired by sec. 30 of the same subchapter, in effect, that an estimate of the whole expenses of such improvements, respectively, to be assessed and charged to each lot, etc., shall be made and filed in the office of the city clerk, for the inspection of parties interested, before such work should be ordered to be done; that such work was to be let to the lowest bidder, upon certain conditions and with certain reservations, upon ten days' notice published in the official paper of the city. Again, it was required by sec. 34 of the same subchapter, in effect, that, upon the determination of the amount chargeable upon the abutting lands and each lot and parcel thereof, notice should be given in such official paper of the letting of the contract for the performance of the work, the filing of such statement, and the proposed issue of bonds unless the lot-owners, respectively, should elect to pay, etc. The tax proceedings required by the charter, when taken together, must be regarded as "due process of law," within the principles sanctioned by the supreme court of the United States in the cases cited. As against the plaintiff who is here invoking equitable relief, the city officers must be presumed to have performed their respective duties, except in so far as the contrary has been specifically alleged. It is to be remembered that the demurrer merely admits the *facts* alleged in the complaint, but not mere conclusions of law.

We are constrained to hold that the complaint does not state facts sufficient to constitute a cause of action.

*By the Court.*— The order of the circuit court is affirmed.