SUMMERLAND INCORPORATED, a corporation, *Appellant,* v. CITY OF PUNTA GORDA, FLORIDA, *Appellee.*

En Banc.

Opinion filed May 8, 1931.

544

*Waltmire & Hughes,* Attorneys for the Appellant;

*J. H. Hancock* and *Hampton & Bull,* Attorneys for the Appellee.

BROWN, J.—This is an appeal from an order sustaining a demurrer to the bill of appellant praying for a decree cancelling certain special assessments assessed against complainant's land made in October, 1924, by the City of Punta Gorda for paving and sewerage and seeking to enjoin the collection thereof. The bill was not filed until September 28, 1928.

The allegations of the bill, which are in very general terms, sometimes amounting to the averment of mere legal conclusions, are in substance as follows: In October, 1924, the City of Punta Gorda assessed certain special taxes for paving, curb, gutters, and storm drainage in stated amounts against each of certain described lots of land owned by appellant in said city and in the same month the said city assessed special taxes for sanitary sewer in stated amounts against each of certain described lots owned by appellant in said city; that special assessments levied against appellant's lands for paving and also the special assessments against appellant's lands for sewerage were not assessed upon a basis of special benefits flowing to said properties on account of local improvements, but such special assessments in each and every instance are far in excess of the special benefits flowing to the specially assessed properties; and that the exaction by the City of Punta Gorda of such special taxes will amount to. taking of private property without just compensation.

The bill repeats these allegations with regard to assessments exceeding the benefits to appellant's lots in different phraseology and further alleges that the said special taxes in both instances were assessed in furtherance of a broad city plan. In some instances the lots assessed for paving and the lots assessed for sewer appear to be incidental. The bill sets forth certain conclusions of the pleader and complains of there being no houses along designated streets between certain intersections where sewer has been laid. It is not alleged that any of these streets front upon or lie in close proximity to appellant's lots.

·An appellate court cannot take judicial notice of the location of the different streets and avenues in a city or town. Anderson v. Ocala, 67 Fla. 204, 64 So. 775, 52 L. R. A. (N.S.) 287.

It is not questioned by the bill that the municipal improvements made and the special assessments levied were regular under the city's charter, Chapter 9055 Laws of Florida, and the supplemental method provided by Chapter 9298 Laws of Florida, for making local improvements for paving and levying special assessments for the costs thereof; nor does the bill attack the constitutionality of said statutes, nor the applicability or constitutionality of the validating act, Chapter 11038 of the Laws of 1925. There is no allegation of lack of notice or of a denial of an opportunity to be heard, in regard to the amount or justice or regularity of such assessments, or that the statutes under which they were made did not provide for due process of law in these respects.

On a hearing on demurrer to the bill to cancel special assessments levied by a municipality, it is assumed, in the absence of express averments to the contrary, that

the assessment proceedings were under existing statutes relating to municipal improvements and improvement assessments and that the proceedings were regular (Grant v. City of Birmingham, 210 Ala. 239, 97 So. 731) and that notices called for by the statute were duly and regularly given. 13 Ency. Pl. & Pr. 317.

Assessments for the costs of a paving program can be justified only on the basis of special and positive benefits accruing to the land improved, while assessments for the costs of a storm sewer program may be justified on the basis of direct, indirect or incidental benefits, the test being whether lots or lands removed from the storm sewer are connected with or will drain into it. City of Fort Myers v. State, 95 Fla. 704, 117 So. 97.

The exaction from the owner of private property of the cost of a public improvement in substantial excess of the special benefits accruing to him, is to the extent of such excess, a taking under the guise of taxation of private property for public use without just compensation, (A. C. L. Ry. Co. v. Lakeland, 94 Fla. 347, text 358, 359, 115 So. 669; Norwood v. Baker, 172 U. S. 269, 43 L. ed. 443, 19 S. Ct. 187; Moore v. Yonkers, 149 C.C.A. 31, 235 Fed. 485, 9 A. L. R. 590; Power v. Helena, 43 Mont. 336, 116 Pac. 415, 36 L. R. A. N. S. 39) and is in violation of his fundamental right and can be defeated if moved against in the proper time. Abell v. Boynton, 95 Fla. 984, 989, 117 So. 507; City of Fort Myers v. State, *supra;* but constitutional rights or privileges which are provided solely for the protection of the property rights of the owner may be waived. Abell v. Boynton, *supra;* Dillon on Municipal Corps. 5th ed. Sec. 1041N; City of Bartlesville v. Holm, 9. A.L.R. 627, and note beginning on p. 634.

Section 105 of Chapter 9055 and Section 7 of Chapter

9298, Laws of Florida, require, in each instance, that notice be given to all property owners of proposed improvements and assessments, and that such notice shall therein set forth a time and place when complaints and claims may be heard before the equalizing board.

The purpose of requiring notice to be given and a hearing had before the equalizing board upon any objections to the creation of special improvement assessments is to give an opportunity to any interested property holder to be heard and to show if he can that his property will not derive any special benefit from the improvement or that his property is made to bear an unjust proportion of the taxation; and equally is it to enable the city to correct any errors or mistakes, and if any appear, to readjust its improvement program before expenses have been incurred or warrants have been issued. Power v. Helena, *supra*.

Appellant could have protested against the assessments at the proper time before the equalizing board. He could have enjoined the letting of the contract for the improvements abutting upon his lands, but for aught that appears in the bill, he failed to avail himself to these remedies provided for his protection. Abell vs. Boynton, *supra*.

A property owner who stands by and permits a public improvement to be made to the benefit of his property under authority of a tribunal having authority to levy an assessment, and who, as in this case, waits for nearly four years before seeking relief in the courts, may be estopped from raising objections which if raised in time would have rendered the assessment invalid. Moore v. Yonkers, *supra*; Abell v. Boynton, *supra*.

The bill alleges appellant has repeatedly demanded of the governing authority that it cause a new assessment

to be made against the properties benefited by the improvements, but there is no averment of any protest or complaint by appellant made before the improvements were made, the cost therefor incurred or the assessment roll approved.

A bill in equity must aver every fact essential to entitle the complainant to relief. Johnson v. McKinnon, 45 Fla. 388, 34 So. 272.

The bill of complaint, not having alleged any fraud or bad faith on the part of the commissioners in making the assessments nor any reason why the remedy provided under the law was not open to appellant and exercised as provided, does not state facts entitling appellant to equitable relief. Abell v. Boynton, *supra;* Power v. Helena, *supra*; Robert Noble Estate v. Boise City 19 Fed. and series, 927; Farncomb v. City and County of Denver, 252 U.S. 7, 64 L. Ed. 424, 40 Sup. Ct. 271.

One of the allegations of the bill is that the ''governing authorities of Punta Gorda are satisfied that all the assessments mentioned herein against the property of your orator are so irregular and defective that the same cannot be enforced or collected, and your orator has repeatedly demanded of the governing authority that it take all steps necessary to cause a new assessment to be made for the whole or any part of the improvements herein mentioned'', following ''as nearly as may be the provisions of the act in such cases made and provided'', but that the governing authority has refused to do so.

This allegation refers to section 14 of Chapter 9298 of the Laws of 1923. But the bill does not allege *when* the governing authority became so satisfied of the irregularity or defectiveness of the assessments, nor *why*, nor in what respect they deem such assessments irregular or defective,

nor that they have ever taken any official action by resolution or otherwise in regard thereto. Nor does it appear when appellant "demanded" of such governing authority that it make such new assessments. Nor does it appear whether under the validation act of 1925, Chap. 11038, the city had the power when the demand was made to make any new assessments.

The chancellor merely sustained the demurrer to the bill with leave to amend, which appears to have been a proper order. Upon the going down of the mandate in this case, the appellant will still have this opportunity to so amend his bill, if he can, as to give it equity, within such reasonable time as may be consistent with the order sustaining the demurrer, with leave to amend, which is here appealed from.

BUFORD, C.J., AND WHITFIELD, TERRELL AND DAVIS, J.J., concur.

ELLIS, J., dissenting:

I think that when a city in violation of the power of taxation seeks to exact from the owner of property the payment of money for the cost of a public improvement and such exaction is substantially in excess of the special benefits which the property derives from the public improvement and by such means seeks to take private property for public use without just compensation under the "guise of taxation", any time is appropriate and timely to raise such unlawful authority and secure the property owner's constitutional right.