MATHEWS, Justice.
In this case the city of North Miami proposes to issue bonds to be known as Water and Sewer Revenue Bonds in the sum of $4,670,000. The action of the city was submitted to the Circuit Court under F.S. Chapter 75, F.S.A. for validation. The proceeding appears to be in strict accordance with the validation act and service on proper parties was obtained.
It appears that the proceedings taken by the municipality were in full compliance with the terms of the so-called Sanitary Sewer Financing Act of 1951, now F.S. Chapter 184, F.S.A., which is a general act potentially applicable to all municipalities in the State.
Pursuant to F.S. Chapter 166, F.S.A., providing for the incorporation of cities and towns, the city adopted a charter which was later validated by Chapter 29318, Special Acts of 1953. It should be particularly noted that the charter is not one which is contained in a special act of the Legislature but is one adopted by the people of the town under the provisions of F.S. Chapter 166, F.S.A., which was later validated by the Legislature and this difference is pointed out in the validation proceedings.
The proceedings had'”for the issuance of the bonds were not in compliance. with all of the terms of the charter of the city which had 'been adopted by the people and validated by the Legislature, but were under the terms of F.S. Chapter 184, F.S. A., which is potentially applicable to all municipalities of the State, and relates particularly to sanitary sewer financing and is applicable to. appellee.
The primary question for consideration here and which was determined by the Circuit Court is, May the city utilize the provisions of the Sanitary Sewer Financing Act of 1951, F.S. Chapter 184, F.S.A., for the issuance of the bonds in question and ignore many provisions and. requirements of its charter, which was adopted and validated in the manner hereinabove set forth ?
The State Attorney takes ' the position that the bonds in question cannot be issued and validated even though the proceedings are under the Sanitary Sewer Financing Act of 1951, F.S. Chapter 184, F.S.A., unless the city also complies with all charter provisions of its home rule charter, adopted and validated as hereinabove stated.
A considerable portion of the decree of the Chancellor is devoted to this question. In his final decree the Chancellor quoted from F.S. Section 184.06, F.S.A., and stated as follows:
“ ‘ * * * The issuance of such bonds shall not be subject to any limitations or conditions contained in any other law, * * *.
" ‘Bonds may be issued under the provisions of this Chapter without * * * any other proceeding or the happening of any other conditions or thing than those proceedings, conditions or things which are specifically required by this Chapter.’
“Finally the Act provides that it shall be deemed an additional and alternative method for the doing of the things authorized; that it shall be regarded as supplemental and additional to powers conferred by other laws and that ‘being necessary for the welfare of inhabitants of the municipalities in the State, shall be liberally construed to effect (its) purposes’ * *
The Chancellor also quoted from Article I, Section 3(a) of the home rule Charter, which was validated by the Legislature, and stated:
“‘The City shall have all the powers granted to municipal corporations and ,, to cities by the Constitution and general laws of this state together with all the implied powers necessary to carry.into-, *901 execution all tlie powers • granted. * * * The enumeration of particular powers by this Charter shall not be deemed to be exclusive, and in addition, to the powers enumerated therein or implied thereby, or appropriate to the exercise of such powers it is intended that the City shall have and may exer- ■ cise all powers which under the Constitution of this State it would be competent for this Charter specifically to enumerate * * *.’
“Among the powers specifically enumerated is the right to acquire and operate all kinds of public improvements including sanitary sewers and ‘to exercise all powers, the object of which is to promote the public health, public safety, public morals and public welfare; and no ordinance enacted hereunder shall be held to be void unless plainly shown to be unrelated to such ends.’ (Article I, Section 3(b) (5).)”
It should be noted that in this section of the charter the people attempted to place in its charter the authority to exercise powers, not only that the city shall have and may exercise under existing law but “all powers which under the Constitution of this State it would be competent for this Charter specifically to enumerate”. It is not necessary that we pass upon the validity or constitutionality of the part of the charter which we have quoted concerning powers which it would be competent for the city to exercise under the Constitution of the State. The city in a home rule charter cannot reserve unto itself unspecified powers which it might be competent under the Constitution for the Legislature to delegate to it. This fact does not destroy the effect or the validity of the remainder of the section that the city shall have all powers granted to municipal corporations and cities under the Constitution and general laws of the State. Such a provision is clear and has reference to F.S. Chapter 184, F.S.A., and any similar general law where the powers are specifically set forth.
In the case of State v. City of Brooksville, 96 Fla. 141, 118 So. 13, the city’s charter was a special act of the Legislature and it provided that the “ ‘council shall have in addition to the powers given them by this act all the powers given to towns and cities under the general statutes of the state of Florida.’” This Court held that there was no conflict between the charter and a prior general law, and that notwithstanding the charter, the city possessed the powers set forth in the general law. The Brooksville case was based on Abell v. Town of Boynton, 95 Fla. 984, 117 So. 507, where the general act was enacted after the special act and was held to provide an additional method to that set forth in the special act or charter.
In the case of City of Lake Alfred v. Lawless, 102 Fla. 84, 135 So. 895, a subsequent general act specifically provided that it was a supplemental, additional and alternative method and procedure. See also State ex rel. West v. Grable, 72 Fla. 61, 72 So. 460.
All other questions presented have been settled by previous decisions of this Court and are without merit. There is no need to prolong this opinion by . a discussion of them.
The decree of the Chancellor validating the bonds in question be and the same is hereby affirmed.
ROBERTS, C. J., and TERRELL and SEBRING, JJ., concur.